I'd like to discuss the retaliation claims and the evidence related to those, and then Ms. Jones will discuss the other claims. We have two retaliation claims, one's related to the FLSA complaint, and the other one is a free speech complaint. They have a little bit different standards. They're set out in the brief, and also the trial judge followed that. The first one dealt with the, under the FLSA retaliation standard, dealt with the Canada case, and basically the situation there is that once the standard is raised, then there's a burden shifting, there's a requirement that a reason for the retaliation of discrimination, which in this case was a reduction in salary for each of five police officers, what it came about. The reason that was ultimately given came later. We didn't have anything in the pleadings. At the summary judgment, 12B6, there was a mention of budgetary concerns. Only at the final pretrial was there a discussion of a budgetary crisis that became a reason to put, to allow these reductions in pay. And what we urge is that those were in fact, the court did not allow those issues to go to the jury, that those were in fact fact issues that the jury could have found or not found, that the budgetary crisis as was described was, was pretextual or was created as an argument to respond to this. And we had... They cut all types of areas of the school? I mean, it wasn't just these officers. There was cutting, yes, Your Honor, but... They did all that? They cut all these different departments just to get back at your clients? That's the theory? No. There was cutting, but our clients had begun to raise issues, and then they became targeted. I mean, they did make choices in the cutting. And just the choice to cut our clients as opposed to others, we urge it was a result of their outspoken behavior in this case, who were within a union, who basically had organized in order to try to get some changes. And then they were the ones who were looked at in the reduction. How many officers in the whole school district? I'm not sure. Do you know how many? Fourteen. Fourteen? Fourteen. Fourteen, Your Honor. Ms. Jones tried the case at trial, and so she is familiar with that. You said it was a reduction in pay, but actually they went from 226 days to 187 days. So isn't that really a reduction in work? It would be a reduction in work, and then we had the time and a half for overtime issue, which also resulted in a reduction of pay. We calculated about $8,000 each per year. But couldn't they go work somewhere else for those other days? I mean, it was the summertime that there was that issue, and there is no school. Well, I don't know if they could have worked somewhere else. Well, usually there's no school in the summertime. I understand, but I'm not sure if the options were available. I mean, it's the need to find the work. I mean, just the fact that there might have been time to do it does not mean that they were able to do it, Your Honor. Let me talk also about the retaliation on the free speech and the speech issues that are involved. That was outlined by the trial judge under the Gibson case. And basically the issue that that turned on was whether or not this was a public issue or a private contract. And Gibson had said, well, in that case, yeah, it was a private contract between two people. Judge at trial takes that issue and applies it to these facts and then says, no, there's no retaliation because we're just talking about a negotiation of private contracts. We urge that that's really not the case. We had five people involved in this. We had reports according to the evidence that they'd taken to not only school board and the superintendent, but also the labor board and also the district attorney's office. Gibson, they just went forward and made the filing directly in the lawsuit without raising it. We also had a difference because of what was described as the public fisk. And that was that there was money involved and these officers were arguing retaliation or misappropriation of the money. They were also arguing that there were bad working conditions on both ours and for other purposes. They're police officers for a school district and so their working conditions can impact the community as a whole and the children and the parents in that school. So they had broader issues that they were trying to raise. And we urged that there was really an improper application of that in that issue. I'd like to finally say that the trial lawyers were very much restricted on the evidence that they were able to present because I would suggest it was just an unwillingness to listen to the opinion or reputation testimony about the character of that school district. The trial judge did most of the objections and basically what she would say, well, you know, these are rumors, this sort of thing. She was willing to hear individual actions, which I suggest may well have been excluded under 404 and 405, but she was not willing to hear general reputation. We urged that it wouldn't have been hearsay. And word hearsay, there's a specific exception that allows that. But it was the only basis here for them to be able to prove the policy of the school district. And so we needed to be able to do it and they had people who were really in a position to know who were willing to do that. All right, thank you, Mr. Stapleton. You've saved time for rebuttal. Ms. Jones? I would first like to address why the court erred in granting the motion for summary judgment as to the officer's FLSA claim. And that would be because a factual dispute occurred. And that factual dispute has to do with what the expert for the officers contended. In her deposition transcript, which was submitted to the court, and in her report, along with the findings as to how much each officer would make if they were to be paid correctly, was submitted to the court. And the court, in her finding for the summary judgment motion, only considered the experts' transcript, deposition transcript. She did not take into consideration the report and the additional findings, a chart that she did on each officer. Isn't that normal if you have an extra test of time? You don't also duplicate the testimony by the report unless you're using it to impeach them. Well, this is at the summary judgment stage. And so what happened in this issue is the judge ruled on the summary judgment. In ruling on her summary judgment, she ruled on four other motions. One of the motions was a motion to strike that the district had filed as to our expert witness. And in our response, we attached the expert report along with her findings and the deposition transcript. We included everything so that the court would get an idea as to what we were alleging and how much money was owed to these officers. It was not attached to the actual summary judgment, but the court did take into consideration the deposition transcript in making her ruling in the summary judgment motion. And the case law says, this is the Delta and Pineland Company v. Nationwide Agribusiness, that in order to assess whether a dispute to any material fact exists, the court considers all of the evidence in the record. And so the fact that she considered the transcript but didn't consider the rest of the expert report, even though they were attached together and even though she addressed all of these issues in the summary judgment motion, it is an issue and we believe that that is error on the district court and that is why that issue should be reversed. In addition to that, she gave more, the court gave more deference to the Department of Labor report and she did note that in her summary judgment response and the Little v. Liquid Air Corps case has held that factual controversies must be resolved in favor of the non-movement. An actual controversy exists when both parties have submitted evidence of contradictory facts. The Department of Labor report clearly stated there was no wrongdoing and the plaintiffs, the officers, were not owed any money, whereas our expert says quite the contrary, that they were owed a bunch of money and wages. So what's the theory of what the district was doing wrong in paying these folks? Do you agree it was a fluctuating work week? When you, when I, our expert did agree that a fluctuating work week could be applied, but the district was not doing it correctly. No matter what, they should have been paid at a time and one-half rate for overtime. They could have done it as a fluctuating work week. They could have done it just straight overtime, but they weren't applying it correctly. And in the motion for summary judgment in her order, the court's vague as to what she actually ruled upon as to what the correct way was to pay them. She really focused more on the fact that the court did not want to search through the record, that the expert report was not attached to the summary judgment response, and that the Department of Labor stated that there was no wrongdoing. And so, but in it, they do talk about the FLSA 207A and the exception, which is the 7K exception, but both of those, according to the expert and in the order, state that you have to be paid at time and one-half. And for those reasons, we believe that that issue should be. With the fluctuating work week, you back in the hours they worked to what they were paid and then determine an hourly level, and then you just have to add on the additional half if they worked overtime hours. I don't know if I understand. Don't worry about it. It's just strange because I've seen a ton of these cases. It's usually not complicated whether the people are paid overtime or not, but here there's an expert. I mean, it's usually pretty clear whether they were paid properly or not. And I just don't quite get, I don't get your theory of how they were wrongly paid. Well, because of the fact that they weren't being paid time and a half. So the 7K exception, which they could pay them, it goes from a range of a 7-day to a 28-day period, but they weren't paying them like that. If you, which I don't, you don't have the records in front of you, but they were not paying them the time and one-half, which the 7K requires for them to be paid time and one-half. They were paying some other method, which the officers did not agree with another to the expert. It was not a time and one-half. It was a different method. But DOL did say they were being paid properly. Well, the DOL did a partial desk audit, and that was another issue that our expert brought up, was that a partial desk audit is not even a correct analysis. They shouldn't even be issuing a report because they did not review the entire record, all of the records. And so that was another issue that was presented to the district court was that the Department of Labor's report shouldn't be taken into consideration because it wasn't a full-on report. It was a desk audit. Weren't they not being paid time and a half because they weren't working overtime? They were working overtime. They've always worked overtime, and that was the issue. Even with the reduction in days? The reduction in days, I can address that. It still affects their salaries. So it was an effect of about $8,000 to $8,500. By cutting down their days, throughout the time that they've been officers there, they've always been on a 2-26 schedule because you need police officers during the summer. You have summer school. You have programs. You need officers on campus. When they cut the days down, it was right after they were notified that they had made the complaint to the Department of Labor, and they targeted the officers. And by cutting their days, it did affect their salaries. And to address what was questioned to Mr. Stapleton, they did look for other employment. They applied as security. They applied to... No other agency is going to hire you as a police officer, but security, maybe at Walmart or Target, they did not get employment. Two of the officers were asked to stay on because of their duties as investigators, as, you know, they had more responsibility, custodian of evidence. So they were asked to stay on during the summer, and they were still being paid the halftime method. Did you say they actually had summer school? They did have summer school that summer, yes. They have summer programs, they have summer school that continues to operate, yes, Your Honor. I also... Your time has expired now. Thank you. Ms. Castillo? Thank you. May it please the court. My name is Stacy Castillo, and I'm with Leandra Ortiz, who is trial counsel in this case, representing San Benito. The appellants have raised multiple issues in this case at various stages of the litigation, from motion to dismiss, motion for summary judgment, to the trial level. But right now, for my argument, I primarily want to focus on the FLSA overtime issue, and also will respond to some of what they raised today. I want to focus on the overtime issue primarily because I feel like the appellants have made this unnecessarily convoluted than it should be. They are primarily focused, as well as their expert, on the 207-K partial exemption to 207-A. The general rule with overtime, as court is aware, is 207-A is that an employee that works over 40 hours a week gets paid time and a half for every hour over 40 hours. There is an exception to that that is available to an employer that employs law enforcement or fire department or fire officials. The 207-K exemption allows them to extend the number of hours required before overtime kicks in, and there's all sorts of regulations on that, on the ratio having to be 171 hours to the 28 work days. The burden of proof is also different on that as opposed to the fluctuating work week. Under 207-K, the employer has the burden to prove that the exemption applies in this case. In this case, we have never claimed that 207-K exemption applies. We have not set a work period specific to the law enforcement officials at the district. Instead, we have used the regulation 29 CFR 778.114, which establishes the fluctuating work week. That is not an exception to 207-A. It is simply a different method of calculating overtime that is consistent with 207-A. So, bottom line is we're not using or claiming the 207-K exemption, and nothing requires that we do. But their expert apparently believes that because there's law enforcement personnel involved, the 207-K exemption has to apply in this instance. They have cited no case law, no legal authority to support that position. And, in fact, there are other cases out there that involve law enforcement personnel that they don't use the 207-K exemption, instead use the fluctuating work week. The focus needs to be on what the fluctuating work week... How can an expert decide the legal issues in the case? And I understand an expert can maybe calculate the money as a financial matter. But, I mean, it's for a court to decide if an exemption applies, not an expert. The court's the expert on that. And that's been our position on this as well. The fluctuating work week is also different than the 207-K exemption because the fluctuating work week, this court in the Samson v. Apollo case indicates that it is the employee's burden, not the employer's, but the employee, to prove that the fluctuating work week method does not apply in this case. And there's four conditions that must be met for the fluctuating work week method to apply. One is the hours that the employee works must fluctuate from week to week and that they're paid on a fixed salary regardless of the number of hours worked in those given weeks. That is exactly what has happened in this case. The third is that their salary cannot go below minimum wage and there must be a clear and mutual understanding that the employer will pay the fixed salary regardless of the number of hours worked. And again, the employee bears that burden. Judge Tegel in this case found that the plaintiffs had failed to explain how the FLSA was violated and differentiate between the fluctuating work week and the 207-K exemption. Your name is pronounced Togley. Oh, thank you. And... under the fluctuating work week, that is the... the way that methodology works is when they're getting a fixed salary for fluctuating work hours, then the overtime is paid at halftime instead of time and a half. Again, it's not an exception. It's a different methodology. The plaintiffs did not... disprove that that does not apply. Instead, their evidence that they submitted with their response to the summary judgment actually proves that the fluctuating work week conditions are met. And in the record, at 1523, in the record, through 1527, there are payroll calculation sheets and the payroll records for the plaintiffs as well as the other officers in the department. And what it shows, and it's broken down in different columns, it shows each week that they worked and each month, there's three months represented in there, July through October. It shows that they received a fixed salary each week that never fluctuated. It stayed the same, that base salary. And each week, the next column shows the hours, number of hours they worked that given week. And their hours indeed did fluctuate. Some weeks, it was 25 hours. Some weeks, it was 30. Some weeks, it was 40-something, 50-something, and so on. Their base salary stayed the same. The next column for their payroll record would show you would take any given week, you would divide their base salary by the number of hours they actually worked that week. That would be their regular rate of pay. You divide that in half. Now that's their half-time rate. Then that number is taken and multiplied by the number of hours worked over 40. So we didn't extend the work period as you would in a 207K exemption. We used the 40-hour work week with a half-time pay. The evidence shows based on those payroll records and how they were receiving their paychecks and how they were getting paid. The case law in this district, as well as the First and Fourth District, simply requires that the employee understand that their hours vary and their fixed salary compensates for those hours worked. It doesn't require that they understand the calculations. It doesn't require they understand the math behind it. It doesn't even require they understand the legal part of it in terms of how the exemption is applied, how it affects the 207A. And when they get their paycheck, it doesn't have regular salary, base salary, and over time it doesn't show that? On the payroll calculation form it shows it. So they would know. And their deposition testimony excerpts that they submitted with their summary judgment response, the officers acknowledged that they knew that they had a base salary that did not fluctuate. And that is on record page 1324, 1326, and 1395 Officer Olivares and Garza testified that they had a set salary that does not change. All of them in those same deposition excerpts acknowledged that they were being paid a half-time rate and that their disagreement was that they didn't understand why it's half-time as opposed to time and a half. And that really boiled down to just as in the briefing in this, that there was a confusion on part of the appellants on the 207K exemption thinking it applies just because we're law enforcement as opposed to fluctuating work week, which is a methodology not an exception. And in the Robinson v. Webster County Board of Supervisors case out of District Court of Mississippi interpreting this provision for law enforcement officers specifically the court noticed that regardless of whether the plaintiff is satisfied with his overtime pay arrangement, the important fact is, is he is aware of how he is paid. And that is exactly this case. The bottom line is, they knew they had a fixed-sex salary. They knew they were getting half-time overtime rate. They knew their work hours fluctuated week to week. And merely because they think time and a half should apply or the 207K exemption that we should have claimed that, that doesn't change the fact that there was a mutual understanding that this is exactly what is applied in this particular case. Additionally, the Department of Labor, when they had done their audit, we had submitted that as evidence that they had found that the audit was done correctly. And they had looked at it and said the half-time pay was applied correctly. They did not present any controverting evidence to that in the summary judgment record. I want to briefly address what they raised today in their argument. They raised on the retaliation claims, their First Amendment FLSA retaliation claim. These were sufficiency of the evidence arguments and they did not bring the entire transcript to the trial. There's actually, there's case law that says the court can't review that without the transcript. The full transcript is not available. They didn't order it. They tried to order it but they didn't explain to the court why the transcript was necessary when they were trying to get it at government expense. We'll take a look at that because it's in the briefing. But go ahead and assume that that's not the case. Even assuming that's not the case and looking at what is actually in the record at this point on the FLSA retaliation they have to prove that the non-retaliatory reasons the district gave were pretextual. They did not controvert the fact that their witnesses the only evidence that's in the record in the testimony their witnesses acknowledged they did not have personal knowledge of how the budget was created how the budget was formed or the issues of the money that was received by the district subsequent to the cut in days that that was used to pay incentives and pay raises a year and a year and a half later. So there's no evidence they provided that controverts any of the non-retaliatory reasons that the district gave on their free speech claim. This one involved three of the officers and going back to not having a transcript, there's nothing in the record that shows those three officers what their speech was. So there's nothing to review in the record to say what they testify, does that constitute a matter of private concern or public concern. In this instance even assuming looking at what we do have in the record from the summary judgment  their speech concerns an inherently private matter about their wages. Throughout the process of grieving their wages and the overtime issues, they were done internally at the school district with the assistant superintendent and then at a board meeting that was held in closed session. This has always been generally our case law internal employee grievances even with public entities is not considered a matter of public concern even though the public might as a general matter be concerned with whether employees are being paid enough. That's correct. Compensation is typically a quintessential matter of private concern and that's exactly what this is in this situation. They also make a note that the court restricted some of the evidence they could produce regarding retaliatory motives. That ends regardless of how the court would rule on that it would end up being harmless error because in this case the two officers that did try their First Amendment claims the very first question the jury was asked was, was there adverse employment action taken against these officers? The jury answered no. So you don't even get to the other questions of causation or whether there's a practice or policy of retaliation. So what kind of evidence was regarding on the practice and pattern is irrelevant at this point because the jury didn't even get to those questions. And concerning their claims about the expert report being part of the summary judgment evidence, when the court reviews the record, they'll see that the expert report that they're referring to was part of the record on their response to our motion to strike their expert or it's not part of the record of the summary judgment. They did not attach it to their summary judgment response and case law says the district court's not required to scour the record to look for evidence that supports their position. And if the court has no further questions That's Stefano's report. I'm sorry? That's Stefano's report. Yes, ma'am. Thank you, Ms. Steele. I'm sorry? You were finished? Yes, I'll yield my time. Thank you, Ms. Steele. Mr. Stapleton, you save time for a vote. Thank you, Your Honor. On the issue of whether or not there was harm on excluding the evidence two of the plaintiffs did have a jury ruling, but that jury ruling was based on not having received the evidence of the reputation of the district from prior employees in the district, people in the know, or their opinion as to whether or not they were retaliatory, whether or not they were corrupt. The opinions that were going to be given that were excluded we would urge are not resolved by that answer to the jury question, but they were impacted. The jury question's answers were impacted. And of course that does not solve the problem of the three officers who did not get to submit that at all. And so, you know, to say well, no harm is there, we're sort of in a position of did the school board sit and say let's intimidate, let's retaliate against police officers. I know that that has happened, but I think it's going to be rare and in order to get there the reputation and opinion testimony of other people who are familiar with it is about the only thing that we're going to be able to get to establish that. And they were not allowed to present that evidence and it's going to impact all the answers and all the decisions all the way through. As far as the issue of of the attachment of the report to the summary judgment, there are five matters decided at the same time. One of those had that report attached. It was plainly there for Judge Togliatti to rule. And so in order to seize on the say well you attached it to one motion but not to another, we would urge is not a reasonable record. And I understand that they're not required to comb the record. As far as the decision making I would submit that Judge Togliatti never reached the issue of what is the proper overtime pay. That that's not in the decision. It was not resolved. That there are going to be fact issues whatever her decision is made on that and the summary judgment issues or even the 12B6 issues are still going to be available on that. I would like to talk about the lack of transcript on this. We didn't of course make a choice not to submit the transcript. There was it was a matter of resources. It's going to be that case. I think in a lot of cases similar to this we asked that they be funded as indigents and we got some partial relief on that but not for additional transcript. We asked for continuance so that the labor union  on that. And we would have... Why would they qualify as indigents? Well they did. The court found when we submitted it that they were police officers at the school district paid poorly and they're paid for a short amount of time and they have families and they just didn't have the resources really to fund this. And so you know they did their best and I think everybody did their best with the resources that we had. It's within the rule that we submit a partial record and we were qualified and submitted it on that way. So I would ask that you not hold prejudice against us for not having submitted the whole record. Thank you Mr. Under submission.